# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Enterprise Leasing Co. of St. Louis v. Hardin*, 2011 IL App (5th) 100201**

| | |
|---|---|
| Appellate Court Caption | ENTERPRISE LEASING COMPANY OF ST. LOUIS, Plaintiff-Appellant, v. LINDA HARDIN, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-10-0201 |
| Filed | September 8, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action that arose from an automobile accident that occurred while defendant was driving a car she rented from plaintiff for a business trip and two passengers who were her coworkers were injured, the trial court properly entered summary judgment for defendant when plaintiff paid claims to the two passengers and then sought indemnification from defendant pursuant to the rental contract, since the payments plaintiff made to the passengers were not within the scope of the rental contract's indemnity clause and requiring defendant to pay to settle her coworkers' claims would be at odds with the Workers' Compensation Act. |
| Decision Under Review | Appeal from the Circuit Court of Williamson County, No. 09-LM-312; the Hon. Ronald R. Eckiss, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Jeffrey S. Deutschman, of Deutschman & Associates, P.C., of Chicago, for appellant.

James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellee.

Panel

PRESIDING JUSTICE CHAPMAN delivered the judgment of the court, with opinion.

Justices Welch and Spomer concurred in the judgment and opinion.

**OPINION**

¶ 1 The defendant, Linda Hardin, rented a vehicle from the plaintiff, Enterprise Leasing Company of St. Louis, for a business trip. Two of her coworkers were passengers in the vehicle. Both passengers were injured in an accident while Hardin was driving in Kentucky. The plaintiff paid claims to the two passengers and then sought indemnification from the defendant pursuant to the rental contract. The trial court granted the defendant's motion for summary judgment, finding that (1) once the plaintiff paid the coworker/passengers' claims, it "stepped into [their] shoes" and (2) their claims against the defendant would be barred under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2006)). The plaintiff appeals that ruling, arguing that (1) its claim is not barred by the Workers' Compensation Act because it is a claim for indemnification, not subrogation, and (2) the voluntary-payment doctrine is not applicable. We affirm.

¶ 2 The defendant rented a car from the plaintiff for a business trip. She was driving in Kentucky when she collided with a median, injuring her two passengers. Both passengers were the defendant's coworkers, and all three were acting in the course of their employment when the collision occurred. The passengers, Christopher Cagle and Jeremy Hess, filed workers' compensation claims for their injuries. They also submitted personal injury claims to the plaintiff. The plaintiff paid Cagle and Hess $16,250 in settlement of those claims.

¶ 3 The plaintiff subsequently filed a complaint against the defendant seeking to recover the $16,250 it paid on her behalf. The complaint alleged that the defendant had breached the contract by driving the vehicle outside the State of Illinois and that she had driven negligently. The complaint further alleged that the plaintiff paid claims of $16,250 as a result of the defendant's negligence. Attached to the complaint was the rental contract. In relevant part, the contract provided that the defendant was to indemnify and hold harmless the plaintiff for any losses it sustained as a result of her use of the car, including claims of third parties.

¶ 4 The defendant filed a motion for summary judgment, arguing that (1) the plaintiff's claimed right to payment from the defendant was derivative of Cagle and Hess's cause of

action against her and (2) the exclusivity provision of the Workers' Compensation Act bars claims against a coworker for injuries sustained in the course of employment due to the negligence of the coworker. See 820 ILCS 305/5(a) (West 2006); *Ramsey v. Morrison*, 175 Ill. 2d 218, 224, 676 N.E.2d 1304, 1307 (1997).

¶ 5 The plaintiff filed a response to the defendant's motion. In the response, the plaintiff alleged that the rental agreement required the defendant to indemnify it for any losses it sustained as a result of her negligence. The plaintiff further alleged that the defendant declined supplemental liability coverage, which would have paid for the claims, and that she had not submitted the claims to her own car insurance company. It also alleged that its representative did not know that the accident was work-related or that Cagle and Hess were the defendant's coworkers. The plaintiff argued that it was required to settle Cagle's and Hess's claims under the mandatory insurance law (625 ILCS 5/9-101 *et seq.* (West 2006)) and that the Workers' Compensation Act was not relevant because there was no employment relationship between the plaintiff and the defendant or her injured coworkers.

¶ 6 The defendant filed a reply to the plaintiff's response in which she argued that Hess and Cagle did not have common law claims against the defendant due to the exclusivity provision of the Workers' Compensation Act. See 820 ILCS 305/5(a) (West 2006). As a result, she argued, the plaintiff was not obliged to pay their claims on her behalf. Thus, she argued, payment of the claims was a voluntary payment for which she had no obligation to indemnify the plaintiff.

¶ 7 The plaintiff responded, repeating its allegations that the representative who handled Cagle's and Hess's claims did not know that the passengers were the defendant's coworkers or that the accident occurred in the course of their employment. The plaintiff argued that, as such, the mistake-of-fact exception to the voluntary-payment doctrine applied. Finally, the defendant responded with an affidavit from the attorney who represented Cagle and Hess. He averred that the medical records he submitted in support of their claims clearly indicated that it was a work-related accident. As previously mentioned, the court granted the defendant's motion for summary judgment. This appeal followed.

¶ 8 Our review of a ruling on a motion for summary judgment is *de novo*. Summary judgment is appropriate when the pleadings, depositions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315, 821 N.E.2d 269, 275 (2004). We may affirm the trial court's decision to grant or deny a motion for summary judgment on any basis appearing in the record, even if it is not the basis the trial court gave for its ruling. *Home Insurance Co.*, 213 Ill. 2d at 315, 821 N.E.2d at 275-76.

¶ 9 The plaintiff first argues that the trial court erred in finding its claim barred by the Workers' Compensation Act. We disagree.

¶ 10 Section 5(a) of the Workers' Compensation Act provides, in relevant part:

"No common law or statutory right to recover damages from the employer *** or the agents or employees of [the employer] for injury *** sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein

provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5(a) (West 2006).

This provision gives employees immunity from liability for negligence that injures their coworkers. *Ramsey*, 175 Ill. 2d at 224, 676 N.E.2d at 1307.

¶ 11 As previously noted, the plaintiff argued to the trial court that this statutory provision was inapplicable because it did not have an employer-employee relationship with the defendant or the injured passengers. However, courts that have considered this provision in the context of third-party claims have generally concluded that the rights of third parties yield to this provision where it is necessary to promote the goals of the Workers' Compensation Act.

¶ 12 In *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991), our supreme court considered to what extent an employer could be liable to a third party where both the third party and the employer are responsible for an employee's injury. There, the employee was injured operating a machine in the course of his employment. He brought a products-liability claim against the manufacturer of the machine. *Kotecki*, 146 Ill. 2d at 156, 585 N.E.2d at 1023. The manufacturer in turn brought a third-party claim against the plaintiff's employer. *Kotecki*, 146 Ill. 2d at 156, 585 N.E.2d at 1023-24.

¶ 13 There, as here, the third party had no employment relationship with the injured worker. However, this did not mean that the Workers' Compensation Act was irrelevant to the issue of the employer's potential liability to the third party, the manufacturer of the machine. Instead, the court had to balance the interest of the employer, as a participant in the workers' compensation system, and the interest of the manufacturer in not paying more than its proportionate share of the liability for the plaintiff's injuries. *Kotecki*, 146 Ill. 2d at 164, 585 N.E.2d at 1027.

¶ 14 In determining how best to strike this balance, the court considered that one of the key purposes of the workers' compensation system is that both employees and employers " 'receive the benefits of a guaranteed, fixed-schedule, nonfault recovery system.' " *Kotecki*, 146 Ill. 2d at 162-63, 585 N.E.2d at 1026 (quoting *Lambertson v. Cincinnati Corp.*, 257 N.W.2d 679, 684 (Minn. 1977)). The court ultimately adopted a rule previously promulgated by the Minnesota Supreme Court that the third party's right to seek contribution from the employer was limited to the amount of the employer's liability to the injured employee under the Workers' Compensation Act. *Kotecki*, 146 Ill. 2d at 164, 585 N.E.2d at 1027 (citing *Lambertson*, 257 N.W.2d at 689). The reason for this rule is that requiring the employer to contribute more than that amount to the employee " 'through the conduit of the third-party tortfeasor' " would be at odds with the limitation on employer liability, a key provision of the workers' compensation system. *Kotecki*, 146 Ill. 2d at 162-63, 585 N.E.2d at 1026 (quoting *Lambertson*, 257 N.W.2d at 684).

¶ 15 In *Ramsey v. Morrison*, the court again considered the tension between the right to contribution from joint tortfeasors and the workers' compensation system, this time in a context closer to the facts of the case before us. There, the plaintiff was a passenger in a truck driven by his coworker when they were involved in a collision with another vehicle. Both the plaintiff and his coworker were acting in the course of their employment when the collision occurred. *Ramsey*, 175 Ill. 2d at 220, 676 N.E.2d at 1305. The plaintiff received workers'

-4-

compensation benefits for his injuries from his employer. *Ramsey*, 175 Ill. 2d at 220-21, 676 N.E.2d at 1305. He subsequently filed a suit against the driver of the second car. The second driver filed a third-party complaint seeking contribution from the employer. *Ramsey*, 175 Ill. 2d at 221, 676 N.E.2d at 1305. The court emphasized that the driver of the truck was immune from liability to his coworker under the Workers' Compensation Act. The court then framed the issue before it as "whether a third party sued by an injured employee may recover contribution from a coemployee who is immune from a direct suit by the plaintiff" under the Workers' Compensation Act. *Ramsey*, 175 Ill. 2d at 224, 676 N.E.2d at 1307.

¶ 16    In deciding this question, the court once again considered the purpose of the relevant provision of the Workers' Compensation Act and the tension between that provision and the third party's right to contribution from a party who may be jointly liable. The court explained that the essential purpose of the workers' compensation system is " 'to place the cost of industrial accidents upon the industry.' " *Ramsey*, 175 Ill. 2d at 227, 676 N.E.2d at 1308 (quoting *Rylander v. Chicago Short Line Ry. Co.*, 17 Ill. 2d 618, 628, 161 N.E.2d 812, 818 (1959)). The court further explained that coworker immunity is a key component of this essential purpose. *Ramsey*, 175 Ill. 2d at 229, 676 N.E.2d at 1309. This is because allowing a contribution claim against an otherwise immune coworker would shift the burden of compensating the injured employee from the employer to the coworker. It would thus "entirely defeat the effect of the immunity granted to coemployees and would thereby defeat a central purpose of the Workers' Compensation Act." *Ramsey*, 175 Ill. 2d at 229, 676 N.E.2d at 1309. The court concluded that the coworker immunity "prevails over the right to contribution" and held that it is a bar to third-party contribution claims against coworkers. *Ramsey*, 175 Ill. 2d at 230, 676 N.E.2d at 1310.

¶ 17    The defendant contends that *Ramsey* controls our decision. The plaintiff argues, however, that *Ramsey* is distinguishable because it involved contribution rather than indemnification. In a related argument, the plaintiff contends that the trial court erred in finding that it had "stepped into the shoes" of Cagle and Hess after it paid claims to them on behalf of the defendant. It argues that this is so because its claim is one for indemnification rather than subrogation. That is, the plaintiff sued the defendant in its own right based on the defendant's contractual obligation to reimburse or indemnify the plaintiff for any losses it sustained as a result of her negligence.

¶ 18    In one sense, this is correct. Contribution (which was at issue in both *Ramsey* and *Kotecki*), subrogation, and indemnification are distinct causes of action. *Home Insurance Co.*, 213 Ill. 2d at 315-16, 821 N.E.2d at 276. Contribution is a remedy that allows jointly liable tortfeasors to hold other culpable parties responsible for their proportionate share of the joint liability. *Ramsey*, 175 Ill. 2d at 224, 676 N.E.2d at 1307. By contrast, both indemnification and subrogation place "the *entire* burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged." (Emphasis in original.) *Home Insurance Co.*, 213 Ill. 2d at 316, 821 N.E.2d at 276. A party seeking indemnification does so in its own right, while a party seeking subrogation does so as a successor to another party's right to payment. *Home Insurance Co.*, 213 Ill. 2d at 316, 821 N.E.2d at 276. Thus, the plaintiff did not truly "step into the shoes" of the defendant's coworkers when it paid their claims.

¶ 19        However, we find that the court reached the right result for two reasons. First, we find that requiring the defendant to pay for the cost of settling her coworkers' claims would be at odds with a key provision of the Workers' Compensation Act. Second, as the plaintiff points out, the indemnity it seeks is based on a contractual indemnity clause, and we find that the payments made to Cagle and Hess do not fall within the scope of that clause.

¶ 20        We previously discussed at length our supreme court's rationale for finding that coworker immunity bars contribution claims by third parties. We believe that rationale applies with equal force to indemnification claims such as the one at issue here. Requiring the defendant to bear the cost of the claims paid by the plaintiff for which she would have been immune from liability if sued directly would shift the burden of these work-related injuries from the employer to the coworker. We also note that the claims could exceed the limits placed on the employer's liability by the Workers' Compensation Act. This would thereby defeat the purpose of the Workers' Compensation Act just as surely as would allowing a third-party contribution claim under similar circumstances.

¶ 21        Our conclusion is further supported by the fact that the plaintiff seeks indemnification under a contractual provision. An indemnity clause in a contract is subject to the general rules of contract interpretation applicable to any other contractual provision. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556, 866 N.E.2d 149, 153 (2007). Our primary objective in interpreting such provisions is therefore to ascertain and effectuate the intent of the parties. The best indication of the parties' intent is the language of the provision itself. If the provision is unambiguous, its words should be given their plain and ordinary meanings. *Virginia Surety Co.*, 224 Ill. 2d at 556, 866 N.E.2d at 153.

¶ 22        The provision at issue here read as follows:

"Renter shall *** indemnify and hold Owner harmless from all losses, liabilities, damages, injuries, claims, demands, costs, attorney fees and other expenses incurred by Owner in any manner from this rental transaction or from the use of Vehicle by any person, including claims of or liabilities to third parties. Renter may present a claim to Renter's insurance carrier for such events or losses, but in any event, Renter shall have final responsibility to Owner for all such losses. This obligation may be limited if Renter purchases optional Damage Waiver and/or optional Supplemental Liability Protection."

The plaintiff points to the language stating that the clause is applicable to "all losses" arising "in any manner" from the use of the rental vehicle. While this language is very broad, we do not believe it is broad enough to encompass claims for which the defendant cannot be held liable under the law. We must interpret a contract to be consistent with the law and public policy of this state. See *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 976-77, 700 N.E.2d 181, 187 (1998) (explaining that courts cannot enforce contractual provisions that violate public policy but that "public policy itself strongly favors freedom to contract"). In addition, we note that the clause provides that the renter may submit a claim to her own automobile insurance company or purchase supplemental liability protection, either of which might cover the loss. Neither a driver's own insurance nor a supplemental liability policy will pay claims for which a driver is not liable. Logically, the clause is meant to apply to the types of losses that would be covered by these forms of insurance–that is,

those losses for which the renter is liable. Thus, we find that the claims of Hess and Cagle were outside the scope of the indemnity clause.

¶ 23　　Finally, the plaintiff contends that the voluntary-payment doctrine does not bar its claim for two reasons. First, the plaintiff points out that the voluntary-payment doctrine is applicable only to cases involving payments from the plaintiff to the defendant. See *CIMCO Communications, Inc. v. National Fire Insurance Co. of Hartford*, 407 Ill. App. 3d 32, 37-38, 943 N.E.2d 276, 281-82 (2011); see also *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 36, 828 N.E.2d 1155, 1174 (2005) (finding the doctrine applicable where a benefit passed from the plaintiff to the defendant, although indirectly). The plaintiff also contends that an exception to the voluntary-payment doctrine for mistake of fact is applicable here.

¶ 24　　We need not resolve these arguments. We first note that the trial court did not decide whether the voluntary-payment doctrine or the mistake-of-fact exception was applicable to this case. Moreover, we believe the principles we have discussed adequately resolve the question before us.

¶ 25　　For the foregoing reasons, we affirm the judgment of the trial court.

¶ 26　　Affirmed.