Rule 23 order filed
December 2, 2020.
Motion to publish granted
December 18, 2020.

2020 IL App (5th) 170458

NO. 5-17-0458

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| BUDGET RENT-A-CAR SYSTEM, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-AR-634 |
| | ) | |
| SHANIKA CLEVELAND, | ) | Honorable |
| | ) | Thomas B. Cannady, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justice Moore concurred in the judgment and opinion.
Justice Cates specially concurred, with opinion.

**OPINION**

¶ 1    Plaintiff, Budget Rent-A-Car System, Inc. of St. Louis, Missouri (Budget), filed a breach of contract action against defendant, Shanika Cleveland, seeking to recover damages from a car accident involving a rental car it had leased to Cleveland. Following a jury trial in St. Clair County, a judgment was entered in favor of Budget. On appeal, Cleveland argues that the circuit court erred in denying her posttrial motion for judgment notwithstanding the verdict (JNOV). Alternatively, Cleveland requests a new trial to submit her affirmative defense that Budget paid as a volunteer, because, according to Cleveland, Budget was not legally obligated to pay the claimed damages. For the following reasons, we reverse the judgment and remand for a new trial consistent with this opinion.

1

¶ 2                                    I. Background

¶ 3     On May 16, 2010, Cleveland rented a vehicle from Budget and signed a one-page "Rental

Document Jacket" that incorporated the rental agreement. The rental agreement contained all

rental terms and conditions, as well as the following notice: "NO ADDITIONAL DRIVERS

ARE AUTHORIZED OR PERMITTED WITHOUT BUDGET'S PRIOR WRITTEN

APPROVAL ***." As such, Cleveland was the only authorized driver of the rental car per the

rental agreement. On May 22, 2010, Sammy Morning, Cleveland's boyfriend, was driving the

rental car in East St. Louis, Illinois, without a valid driver's license, when he was involved in a

car accident that allegedly caused damage to two other automobiles and injured four occupants.

¶ 4     The rental agreement also defined prohibited uses of the vehicle and contained an

indemnity clause. The relevant sections at issue are paragraphs 14, 15, and 18. With regard to the

prohibited uses of the rental car, paragraph 14 provided the following:

> "14. **Prohibited Use of the Car**: Certain uses of the car and other things you or a
> driver may do, or fail to do, will violate this agreement ***. A VIOLATION OF THIS
> PARAGRAPH, WHICH INCLUDES USE OF THE CAR BY AN UNAUTHORIZED
> DRIVER, WILL AUTOMATICALLY TERMINATE YOUR RENTAL, VOID ALL
> LIABILITY PROTECTION AND ANY OPTIONAL SERVICES THAT YOU HAVE
> ACCEPTED, INCLUDING SUPPLEMENTAL LIABILITY INSURANCE,
> PERSONAL ACCIDENT & EFFECTS INSURANCE, EMERGENCY SICKNESS
> PROTECTION AND LOSS DAMAGE WAIVER. IT ALSO MAKES YOU LIABLE
> TO US FOR ALL THE PENALTIES, FINES, FORFEITURES, LIENS AND
> RECOVERY AND STORAGE COSTS, INCLUDING ALL RELATED LEGAL
> EXPENSES, FEES AND COSTS.
>
> It is a violation of this paragraph if:
>
> A.     You *** permit the car to be used: 1) by anyone other than an authorized driver,
>        as defined in paragraph 15 below *** or
>
> B.     You or an additional driver, authorized or not: 1) fail to properly report any
>        damage in or loss of the car when it occurs or when you learn of it and provide us
>        with a written accident/incident report or fail to cooperate fully with our
>        investigation ***. *** 3) leave the car and fail to remove the keys or close and

lock all doors, close all windows and the truck and the car is stolen or vandalized."

Next, paragraph 15 provided the following:

"15. **Who May Drive the Car**: Except where otherwise specifically authorized by applicable law, only you, your spouse, or domestic partner \*\*\* may drive the car, but only with your permission. The other driver must be at least 25 years old and must be a capable and validly licensed driver \*\*\*."

Lastly, paragraph 18 provided the following indemnification clause:

"18. **Indemnification and Waiver**: You agree to indemnify us, our parent and affiliated companies, for and hold us harmless from any loss, liability and expense that we incur arising out of the use of the car, including reasonable attorney's fees: \*\*\* (b) which results from any unauthorized use or prohibited operation of the car."

¶ 5      On July 10, 2015, Budget filed a verified complaint against Cleveland, suing as the owner of the rental car, not the insurer. Budget alleged that Cleveland had breached the rental agreement by engaging in "unauthorized and/or prohibited use of the rented vehicle, namely negligence, gross negligence" and for allowing an "unauthorized person, Sammy Morning, to operate the vehicle owned by Budget and rented by Cleveland." In addition, Budget asserted that, as a result of the accident, it had reimbursed the third parties for damages suffered to their persons and vehicles in the amount of $36,462.48. Budget claimed that it was entitled, pursuant to the "Indemnification and Waiver" provision, to be reimbursed for the payments it made to the third parties.

¶ 6      On August 6, 2015, Cleveland filed a motion to dismiss, pursuant to section 2-606 of the Code of Civil Procedure (735 ILCS 5/2-606 (West 2014)), claiming that the rental agreement had not been attached to Budget's complaint. Shortly thereafter, on August 21, 2015, after Cleveland received a copy of the complete contract from Budget's attorney, Cleveland withdrew her motion to dismiss. That same day, Cleveland filed a verified answer to Budget's complaint, attaching the "Rental Document Jacket" that had been referenced in Budget's complaint and a

3

complete copy of the "Rental Terms and Conditions."[1] Cleveland asserted an affirmative defense, denying liability for any damages as a result of the accident, because Morning had taken the rental car without her permission. As such, Cleveland argued she was not liable to Budget under the indemnity clause.

¶ 7    The case was set for mandatory arbitration on January 13, 2016. Pursuant to Illinois Supreme Court Rule 90(c) (eff. July 1, 2008), Budget disclosed the Agreement, the police report prepared on May 22, 2010, and Budget's incident report, also prepared on May 22, 2010, by Cleveland. Additionally, Budget disclosed an affidavit from Scott Seemann, an investigator who had been hired by Budget to look into the cause of the collision and to assist in resolving claims by those who claimed property loss or personal injuries, "establishing damages of $36,462.48," and a statement from Rosie Marshall. The arbitration proceeding did not result in a resolution of the dispute, and the case was set for trial.

¶ 8    Several motions were filed in anticipation of trial. Cleveland filed a "Trial Memorandum" that included her affirmative defense, and raised, for the first time, the defense that "Budget was not obligated to pay other drivers and passengers and therefore paid as a volunteer." Cleveland's attorney also submitted a proposed jury instruction based upon "I.P.I. 700.09V, 700.07V, 700.3V, 700.16V, 700.12VC and 700.18V (Modified)." This burden of proof instruction included Cleveland's affirmative defenses and provided as follows:

"If you find that each of the above elements has been proved, then you must consider:

Shanika Cleveland's claim of an affirmative defense.

Shanika Cleveland claims and has the burden of proving the following affirmative defense:

---

[1]The term "Agreement," as used hereafter, refers to both the "Rental Document Jacket" and the "Rental Terms and Conditions."

4

That Budget Rent-A-Car System, Inc. paid the other drivers and passengers in the automobile accident as a volunteer, when it was not obligated to pay.

Budget Rent-A-Car System, Inc. denies Shanika Cleveland's affirmative defense."

Therefore, when Cleveland's attorney submitted her Trial Memorandum on December 8, 2016, the affirmative defense alleged that Budget had not been obligated to pay for the losses suffered by the third parties as a result of Morning's use of the rental vehicle. Simply put, Cleveland alleged that Budget voluntarily paid the damages claimed by the third parties without any legal obligation to do so.

¶ 9        On May 2, 2017, the circuit court ordered the parties to submit a stipulation regarding evidence that the parties agreed would be introduced at trial. Following the rescheduling of the final pretrial hearing, originally set for June 29, 2017, Budget's attorney filed stipulations, although the record does not contain a proof of service indicating whether Cleveland received the proposed stipulations prior to that date. Specifically, Budget stipulated that Cleveland had rented a vehicle from Budget and, per Seemann's affidavit, Cleveland, the only person authorized to operate the rental car, had failed to report the rental car stolen and refused to provide any information following the accident. Also, the stipulation indicated that the accident on May 22, 2010, occurred while the rental car was being driven by Morning, an unauthorized driver. As a result of the accident, Budget made payments, totaling $36,462.48, for property damages and personal injuries.[2] Attached to Budget's stipulations were two exhibits—Exhibit A, a copy of the Agreement, and Exhibit B, the affidavit of Seemann.

---

[2]The record does not contain a report of proceedings or a bystander's report for the June 29, 2017, proceedings. The report of proceedings for the July 10, 2017, trial does reference that the court file-marked the stipulations and assumed that both parties had agreed to them. As discussed, hereafter, counsel for Cleveland was not present at the June 29, 2017, hearing due to scheduling issues, and did not agree to the stipulations tendered by Budget.

¶ 10    On July 10, 2017, prior to jury selection, the circuit court entertained several pretrial matters. The circuit court first addressed Budget's stipulations, file-marked June 29, 2017. Cleveland's attorney indicated to the court that he had not agreed to the stipulations filed by Budget's attorney. Although he had no objection to the admissibility of Exhibit A, Cleveland's attorney objected to Exhibit B. Budget's attorney agreed that Budget could read Seemann's affidavit to the jury, in lieu of live testimony, but Cleveland was not stipulating to the truth of the facts stated in the affidavit and reserved the right to rebut the facts set forth in Seemann's affidavit.

¶ 11    After considering the parties' arguments, the circuit court set aside the previously file-marked stipulations. The court indicated that Exhibit A would be admitted and go to the jury. With regard to Exhibit B, the court offered Budget's attorney the right to continue trial and call Seemann as a live witness, rather than rely on the affidavit. Budget's attorney declined and indicated that she wanted to proceed to trial on the affidavit alone, even though Cleveland had not agreed to the facts set forth in the affidavit.

¶ 12    The circuit court then reiterated that Budget's cause of action was based upon a breach of contract, and, as such, the evidence was expected to be presented in a manner "only *** pertaining to an alleged breach of written contract. No other cause of action has been alleged and no other cause of action is going to be presented by [Budget]." Cleveland's attorney sought further clarification, stating that Budget "wears two hats," first as a self-insured company under section 9-105 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/9-105 (West 2014)), which required Budget "to provide liability insurance that covers their customer or anyone driving the rented vehicle with their customer's express or implied consent." Cleveland's attorney believed Budget was suing in its "capacity as the lessor of the rental car, not as the

insurer," thus, Budget had "to show that *** in its capacity as lessor [it] was legally obligated to make the payments to the people injured in the accident, and at least we have the defense that they paid as a volunteer."

¶ 13   The circuit court reiterated that Budget had brought a cause of action against Cleveland as the owner of the rental vehicle, not as the insurer, and that Budget would have to prove Cleveland breached the Agreement. The court then concluded that section 9-105 of the Vehicle Code was irrelevant to the breach of contract cause of action. Following jury selection, the parties presented opening statements. Budget's attorney stated the following:

> "In that contract there is a clause for indemnification, which is just a fancy word, is if we have to spend money you have to pay us back.

> * * *

> [Morning] didn't have a valid license, and he's unauthorized. Unauthorized doesn't mean [Cleveland] authorized him, it means—according to the contract he wasn't supposed to be driving the car. He was driving the car. It got into an accident. Because of that accident Budget paid out money.

> * * *

> The evidence will show we tried to get ahold of Ms. Cleveland. She wasn't cooperating with us. This car was never reported stolen. So we pay out to protect ourselves and our company, our car, our car that caused the damage."

¶ 14   Next, Cleveland's attorney gave his opening statement. He asserted that Morning drove the rental car without Cleveland's permission; therefore, Cleveland "wasn't liable for the accident. She wasn't driving. She didn't allow Sammy Morning to take the car." Further, Cleveland's attorney explained that Cleveland had asserted an affirmative defense, and that she was not obligated under the contract to indemnify Budget where Budget chose to make payments, despite no legal obligation on its part to do so. No objection was raised to Cleveland's argument.

7

¶ 15    Following opening statements, the circuit court conducted a hearing outside the presence of the jury to address the admissibility of the exhibits and jury instructions. Budget tendered several instructions specifically related to its breach of contract claim. These were identified as Plaintiff's Instructions No. 3, No. 6, and No. 7. Cleveland's attorney objected to Budget's jury instructions because none of them had been modified to include Cleveland's affirmative defenses. Cleveland's attorney submitted a modified jury instruction, Defendant's Instruction No. 1, which included the following affirmative defenses:

> "Shanika Cleveland claims and has the burden of proving the following affirmative defense:
>
> That Shanika Cleveland did not authorize or permit Sammy morning to use the rental car at the time of the accident.
>
> That Budget Rent-A-Car System, Inc. paid the other drivers and passengers in the automobile accident as a volunteer, when it was not obligated to pay."

¶ 16    In response, the circuit court, once again, reiterated that the breach of contract issue was "going to the jury on that question of fact." In addressing Cleveland's argument that the jury instructions failed to hypothesize Budget's obligation to make payments to the third parties, the court refused to tender Cleveland's instruction that contained the affirmative defenses. Instead, the court stated that Budget had "the burden of showing the conditions of the contract *** and then the breach of such written contract. I am not going to instruct the jury on anything further. That's not within the four corners of the contract."

¶ 17    The jury was then reseated, and Budget called it first witness, Marshall, a driver involved in the May 22, 2010, accident, who testified to the following details. On May 22, 2010, Morning rear-ended her vehicle as Marshall attempted to make a left turn, which caused her to veer into oncoming traffic and collide with another vehicle. As a result of the accident, Marshall suffered

back and neck injuries, and her car was declared a total loss. With regard to the payments made by Budget to Marshall, the following colloquy occurred:

"Q. And your injuries and the damage to your car, that was taken care of, correct?
A. Yes, it was.
Q. Okay. Do you know how much was paid for that?
A. Well, I think my car was around 4,500 and my insurance, it paid my hospital bill. That was over 10,000."

¶ 18    Next, Budget called Cleveland to testify as an adverse witness. Cleveland admitted that she had signed the Agreement on May 16, 2010, to rent a vehicle from Budget. Following the accident on May 22, 2010, Cleveland testified that she "called Budget and informed them that the car was in an accident ***, [w]ent to the accident scene, went to the police station to get the police report, and went to provide that information to Budget since they asked [her] to just provide the information on the accident." On the accident report, identified as Exhibit C, Cleveland acknowledged Morning as the driver of the vehicle at the time of the accident. Cleveland testified that Morning only occasionally stayed at her address, and that she had never allowed Morning to drive the rental car because he was not a validly licensed driver. During the clarification examination by her own counsel, Cleveland explained that she had contacted Budget after the accident and was instructed to fill out the accident report that Budget had identified during her testimony.

¶ 19    Budget then offered into evidence Exhibit B, the affidavit of Seemann. The circuit court explained that Exhibit B was being admitted as "if Scott Seemann were present, he would testify as set forth in the affidavit." The court did not give any sort of limiting instruction that indicated Cleveland contested the facts set forth in the affidavit. Budget's attorney then read the contents of Seemann's affidavit to the jury, without further objection from Cleveland. At the close of Cleveland's testimony, Budget's attorney moved to admit the exhibits into evidence. Exhibit A,

9

the Agreement, had already been admitted. With regard to Exhibit B, the Seemann affidavit, Cleveland's attorney renewed his objection and asked that the jury not be given the affidavit. The court agreed and admitted Exhibit B only for the testimony contained therein, but not as an exhibit to be reviewed by the jury. Exhibit C, the accident report completed by Cleveland, was admitted without objection. Budget then rested its case.

¶ 20    At the close of Budget's evidence, both parties filed written motions for directed verdict. Cleveland argued that Budget had not proved that any of the third parties identified in Seemann's affidavit, other than Marshall, had suffered any injuries or property damage. In addition, Cleveland argued that Budget had failed to present any evidence from which the jury could find that Cleveland had expressly or impliedly consented to Morning's use of the rental car.[3] In contrast, Budget, in filing its motion for a directed verdict, argued that the undisputed evidence demonstrated that Cleveland had breached the contract because Morning was an unauthorized driver. Budget asserted that there was no question of fact left for the jury to decide. Budget claimed that, because it had introduced evidence that Morning was an unauthorized user of the vehicle, Budget had incurred payments to third parties for which it should be indemnified. The circuit court denied both motions, concluding that whether there had been a breach of contract presented a question of fact for the jury.

¶ 21    Cleveland then presented her case-in-chief and testified to the following details. In May 2010, Cleveland rented a vehicle from Budget for one week while her own vehicle was being repaired. When she was not driving the rental car, she parked it at her home or outside of her

_____

[3]Cleveland relied upon section 9-105 of the Vehicle Code for her argument that Budget would only have been obligated to pay third parties if Morning was driving the rental car with Cleveland's express or implied consent.

10

work. Cleveland had dated Morning for several months, and he stayed at her home a few nights a week.

¶ 22    On May 22, 2010, Cleveland went shopping with a relative, leaving the rental car parked at her home. Cleveland testified that she never authorized or permitted Morning to drive her rental vehicle at any time. Following the accident, Cleveland claimed that she prepared an accident report, at Budget's request, and, contrary to Seemann's affidavit, had informed an agent at Budget that the car had been taken without her permission. According to Cleveland, when she spoke with Seemann, he requested payment for damages from the car accident. Cleveland informed him, however, that it was not her responsibility to pay for damages when she had never permitted Morning to drive the rental car.

¶ 23    On cross-examination by Budget's attorney, Cleveland admitted that she did not report the car stolen. She explained that she felt reporting the car as stolen was unnecessary because the police had prepared an accident report, and she had filled out an incident report with Budget. Cleveland reiterated that she had informed Budget that it had been taken without her permission.

¶ 24    Cleveland's next witness was Morning, who testified to the following details. On May 22, 2010, Morning overheard Cleveland say that she was going shopping with a friend in her friend's car. Before Morning left Cleveland's residence, he unlocked the back door. After he observed Cleveland leave, he entered her residence through the back door, obtained the keys to the rental car, and "went for a ride" without Cleveland's permission. At approximately 4 p.m. that day, Morning was involved in a car accident while driving Cleveland's rental car.

¶ 25    On cross-examination, Morning admitted that he had multiple felony convictions and had been in prison at some point after the May 22, 2010, accident. According to Morning, even though they had dated for two years prior to the accident, Cleveland was unaware of his criminal

11

history and that his driver's license had been suspended. Morning indicated he had been "driving around for a while" in Cleveland's rental car before the car accident happened. Morning also admitted that, although he only stayed at Cleveland's place two or three times per week and he did not have a key, he used Cleveland's address as his own. He also indicated that he stayed with his sister when he was not at Cleveland's place, and he also used his sister's address as his own. At the conclusion of Morning's testimony, the defense rested.

¶ 26 At the close of evidence, both parties renewed their motions for directed verdict. The circuit court, once again, denied both motions, concluding that whether Morning was an authorized driver was a factual question under the contract. In particular, the court stated:

> "I don't think factually it matters if he did or did not have permission of the defendant. I think the issue is whether or not [Morning] is an unauthorized user. The contract does not say unauthorized user is someone using the vehicle that—without the consent of the defendant. It describes who is able to do so.
>
> * * *
>
> So, with that in mind, I'm not going to make it a factual issue. *** Did Sammy Morning have consent by the defendant to use the vehicle? I don't care. I don't think that is relevant to these proceedings.
>
> I think almost everyone can agree *** that [Cleveland's] position is I didn't give him permission.
>
> * * *
>
> I don't think it's relevant to these proceedings."

In light of this, the court denied Cleveland's affirmative defense "because it's not relevant. We are going to be bound on this case to this contract." The court determined that the question of fact for the jury was whether Cleveland had breached the written contract. Cleveland's attorney then requested that the court consider the affirmative defense that Budget had no "legal liability" to pay the damages. In response, the court stated:

12

"[L]et us assume [Budget] had no legal obligation to pay these damages. There's been no evidence as to whether or not they did or did not. *** Now, I don't know if they did or did not have legal obligation to pay. They may have voluntarily paid that, and as I set forth previously, I am not precluding you from arguing that, but, frankly, I don't think it is a condition or a burden that [Budget] must prove."

The court then refused to modify the jury instructions to include Cleveland's affirmative defense of voluntary payment, as requested.

¶ 27   Cleveland's attorney then supplemented its written motion by again stating that Budget had failed to prove that anyone, other than Marshall, had sustained damages. The circuit court, again, denied this oral motion, stating, "I'm not sure that pursuant to the Exhibit A [Agreement] there has to be a presentation of injuries. It has to be a presentation of damages." Thereafter, the court made a record regarding the tendering of the final jury instructions, and the objections thereto by Cleveland. After doing so, the jury was re-seated, and closing arguments began.

¶ 28   Each party argued the same points of fact and law as had been presented to the circuit court. At the conclusion of closing arguments, the court instructed the jury. After deliberating, the jury found in favor of Budget and assessed damages against Cleveland in the amount of $36,462.48.

¶ 29   On August 1, 2017, Cleveland filed a posttrial motion seeking JNOV, or, alternatively, requesting a new trial. Cleveland alleged that the circuit court had erred in denying her motion for a directed verdict because (1) there was no evidence that Budget was legally obligated, or had a duty, to pay damages to the third parties when Cleveland did not authorize Morning to use the rental car, as required under paragraph 18 of the Agreement, and (2) Budget had failed to prove that the third parties, other than Marshall, had suffered actual damages. Alternatively, Cleveland alleged that she was entitled to a new trial because the court erred in striking her affirmative

13

defense that Budget paid the amounts claimed as a volunteer, which ultimately prohibited her from defeating Budget's breach of contract claim.

¶ 30     On October 30, 2017, the circuit court entertained Cleveland's posttrial motion. Cleveland's attorney argued that, as a matter of law, Cleveland was liable to Budget under paragraph 18 of the indemnity clause, only if Budget was legally obligated to pay the loss resulting from the unauthorized use of the rental car. Alternatively, Cleveland's attorney requested a new trial based on the court's refusal to permit her tendered jury instruction, which included the affirmative defense that Budget paid the amounts claimed as a volunteer. The court subsequently denied Cleveland's posttrial motion, and Cleveland filed a timely notice of appeal.

¶ 31                                                  II. Analysis

¶ 32                                                 A. JNOV

¶ 33     Cleveland argues that she was entitled to JNOV based on Budget's failure to present evidence establishing its legal obligation to pay damages to injured third parties in support of its breach of contract claim. Cleveland, citing to section 9-105 of the Vehicle Code, claims that the only scenario that would expose Budget to liability would be if Morning had operated the rental car with Cleveland's express or implied consent.

¶ 34     In response, Budget maintains that the contract does not require proof of its obligation to pay third parties for damages. Instead, Budget asserts that "no were [*sic*] in the contract does it read that [Cleveland] is only liable for damages that Budget is legally obligated to pay." Therefore, Budget avers that the circuit court properly denied Cleveland's posttrial motion because the jury correctly concluded that Cleveland breached the contract, regardless of whether Cleveland impliedly or expressly permitted Morning's operation of the rental vehicle. Thus, the question before this court is whether the rental agreement requires Cleveland to indemnify

14

Budget for payments made to third parties for property damages and personal injuries resulting from an unauthorized driver.

¶ 35 A motion for JNOV should only be granted when the evidence and inferences, viewed in the light most favorable to the nonmoving party, " 'so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Thornton v. Garcini*, 237 Ill. 2d 100, 107 (2010) (quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992)). In other words, a JNOV is inappropriate if "reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented." *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006). As such, if there is any evidence where the assessment of the witnesses' credibility or the determination regarding conflicting evidence is decisive to the outcome of the trial, a JNOV may not be entered. *Dunning v. Dynegy Midwest Generation, Inc.*, 2015 IL App (5th) 140168, ¶ 17 (citing *Ford v. Grizzle*, 398 Ill. App. 3d 639, 650 (2010)). Because a motion for a JNOV presents a question of law as to whether there was a complete failure to substantiate a key element of the plaintiff's case, the circuit court's ruling on such a motion is subject to *de novo* review. *York*, 222 Ill. 2d at 178.

¶ 36 In the present case, Budget brought suit against Cleveland for breach of contract. "To establish a breach of contract, the plaintiff must show the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff." *Sherman v. Ryan*, 392 Ill. App. 3d 712, 732 (2009) (citing *Werner v. Botti, Marinaccio & DeSalvo*, 205 Ill. App. 3d 673, 680 (1990)). Cleveland concedes that the Agreement was a valid and enforceable contract between the parties, and she does not argue that Budget failed to perform its obligations under the contract. Because the parties present differing interpretations of Cleveland's contractual obligations, we must first interpret the

15

indemnification clause in the Agreement to determine whether a breach of the contract by Cleveland occurred.

¶ 37　An indemnity agreement is a contract subject to contract interpretation rules. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). On review, a court is to assume that every provision in the contract serves a purpose. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). The primary objective of the court is to determine and give effect to the intent of the parties as expressed in the language of the contract. *Virginia Surety Co.*, 224 Ill. 2d at 556; *Central Illinois Light Co.*, 213 Ill. 2d at 153. To ascertain the intent of the parties and the meaning of the words used in the contract, the court must construe the contract as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the contract language is unambiguous, the contract language should be given its plain and ordinary meaning. *Virginia Surety Co.*, 224 Ill. 2d at 556 (citing *Central Illinois Light Co.*, 213 Ill. 2d at 153). Conversely, if the language of the contract is reasonably susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the drafter of the contract and in favor of coverage. *Central Illinois Light Co.*, 213 Ill. 2d at 153 (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119 (1992)).

¶ 38　The provision in the rental agreement at issue reads as follows:

"18. **Indemnification and Waiver**: You agree to indemnify us, our parent and affiliated companies, for and hold us harmless from any loss, liability and expense that we incur arising out of the use of the car, including reasonable attorney's fees: *** (b) which results from any unauthorized use or prohibited operation of the car."

Cleveland claims that the language "we incur," as written above, means "we are obligated to pay." Cleveland asserts that Budget was under no legal obligation to pay the injured third parties. Therefore, Cleveland did not breach the contract by failing to indemnify Budget for its voluntary payments. To the contrary, Budget maintains that the Agreement required Cleveland to indemnify Budget because Morning's use of the rental car, with or without Cleveland's express or implied permission, was an unauthorized use, and, additionally, because she failed to cooperate with the investigation following the accident.

¶ 39 The indemnity clause in the present case states: "You agree to indemnify us *** for and hold us harmless from any loss, liability and expense that *we incur* arising out of the use of the car ***." (Emphasis added.) We note that the law of indemnity requires some obligation. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 118-19 (1992). That is, in general terms, under the principles of indemnification, indemnity is the obligation resting on one party (indemnitor) to make good a loss or damage another has incurred (indemnitee). *Id.* at 118.

¶ 40 As the provision is written, if we were to accept Budget's interpretation of the use of "we incur" in paragraph 18, Cleveland would essentially be held liable for any and all costs Budget sustained, regardless of the amount. Thus, the provision would essentially resemble strict liability, not indemnity, which would allow Budget to pay any amount for damages that would then bind Cleveland to indemnify Budget, without limitation. However, as discussed in *Enterprise Leasing Co. of St. Louis v. Hardin*, 2011 IL App (5th) 100201, ¶ 22, where the indemnity clause was similar to the one in the present case, this court found the "clause [wa]s meant to apply to types of losses that would be covered by these forms of insurance—that is, those losses for which the renter is liable." Moreover, this court also stated that "[w]hile this language is very broad, we do not believe it is broad enough to encompass claims for which the

17

defendant cannot be held liable under the law." *Id.* Rather, courts "must interpret a contract to be consistent with the law and public policy of this state." *Id.*

¶ 41 Additionally, although paragraph 18 does not expressly state "obligated to pay," the provision is under the bolded title "**Indemnification and Waiver**," and the beginning of the paragraph states: "You agree to indemnify us ***." Giving effect to the intent of the parties, it appears that the parties contracted to allow for indemnification, which is further supported by paragraphs 14 and 15. As such, when read together, it is clear that our interpretation is consistent with additional provisions contained in the Agreement, which evidences the parties' intention that paragraph 18 is an indemnification clause seeking to have Cleveland indemnify Budget for any losses it sustained as a result of her own intentional acts in violation of the contract. That is, her own intentional acts would include her permitting the car to be used "by anyone other than an authorized driver," as stated in paragraph 14(A), which can include "your spouse, or domestic partner *** but only with your permission," as stated in paragraph 15.

¶ 42 More importantly, paragraph 14(B) explicitly addresses the renter's liability in the event the rental car was stolen or vandalized. Specifically, if the renter or an additional driver, authorized or not, "leave[s] the car and fail[s] to remove the keys or close and lock all doors, close all windows and the truck and the car is stolen or vandalized," the renter would be held in violation of the rental agreement and subject to liability. The construction of paragraph 14(B), directly following paragraph 14(A), demonstrates that the renter would be liable if the car was stolen or vandalized because the renter *permitted* an unauthorized driver, that is, someone who is not a spouse or domestic partner, to drive the rental car. As such, in refusing to look at one provision in isolation, but viewing the contract as a whole, the provisions stated above

18

demonstrate a breach of contract when the renter takes some affirmative act or makes some omission prohibited by the contract which would expose the renter to liability.

¶ 43    We note that the circuit court found it unnecessary to the breach of contract case to determine whether Budget had to prove its legal obligation to make payments to the third parties. Specifically, the court stated the following, with respect to Cleveland's affirmative defense regarding voluntary payment:

> "THE COURT: *** [L]et us assume they had no legal obligation to pay these damages. There's been no evidence as to whether or not they did or did not. You're going to have to argue that that is not a breach of contract. Okay? Now, I don't know if they did or did not have legal obligation to pay. They may have voluntarily paid that, and as I set forth previously, I am not precluding you from arguing that, but, frankly, I don't think it is a condition or a burden that the Plaintiff must prove."

We disagree. Having ascertained the intent of the parties and the meaning of the words used in the contract, that is, one of indemnification and not strict liability, we find, as a matter of law, that Budget was required to prove that Cleveland's affirmative act or omission resulted in Budget's liability to pay damages. See *Enterprise Leasing*, 2011 IL App (5th) 100201, ¶ 22. Accordingly, if the trier of fact were to find that Cleveland permitted Morning to use the rental car then Budget's payment of damages as a result of the accident would be "involuntary" under this test. Conversely, if the trier of fact were to find that Cleveland had no role in Morning's use of the car, then, as a matter of law, Budget's payment of damages would be "voluntary." Thus, it is these factual questions, rather than the legal conclusion as to voluntary payment, upon which the jury should have been instructed. For these reasons, the circuit court erroneously ruled that these issues of fact had no role to play in the trial.

¶ 44    Despite the foregoing legal errors on the part of the circuit court, we conclude that the court properly denied Cleveland's motion for JNOV. After reviewing the transcript of the trial, we find that, had the jury been properly instructed, it could have reasonably concluded that the

19

testimonies of Cleveland and Morning, specifically, that Morning took the rental car without Cleveland's permission, lacked credibility. First, Cleveland testified that she knew Morning did not have a valid driver's license on the date of the accident, while Morning testified that Cleveland did not know his license had been suspended. Next, Cleveland testified that she did not report the car stolen to police or Budget following the accident. Cleveland also testified that she did not live with Morning at the time of the accident, although she admitted she had listed the same address for both herself and Morning on the accident report. Additionally, although Cleveland filled out the accident report on May 22, 2010, she admitted that she did not comply with Seemann's subsequent requests for information regarding the accident. Moreover, Seemann's affidavit contained evidence that Cleveland had failed to cooperate with his investigation. Finally, Morning's version of events could reasonably be called into question, given his admission at trial that he had multiple prior felony convictions.

¶ 45    As set forth above, although conflicting evidence was presented on the issue, the jury could have reasonably concluded that Cleveland allowed Morning to drive the rental car on the date of the accident. See *Dunning*, 2015 IL App (5th) 140168, ¶ 17 (citing *Ford*, 398 Ill. App. 3d at 650). Accordingly, we cannot conclude that the evidence and inferences so overwhelmingly favor Cleveland that no contrary verdict based on that evidence could ever stand. See *Thornton*, 237 Ill. 2d at 107. Thus, the circuit court properly denied Cleveland's motion for a JNOV.

¶ 46                    B. Motion for a New Trial

¶ 47    Next, we note that Cleveland's motion for a new trial was based on the circuit court's denial of her request for a jury instruction regarding her affirmative defense of voluntary payment. However, as already noted, the circuit court erred in this determination, and we find, as a matter of law, that Budget was required to prove that Cleveland's affirmative act or omission

20

regarding the use of the rental car resulted in Budget's liability to pay damages to third parties. See *Enterprise Leasing*, 2011 IL App (5th) 100201, ¶ 22.

¶ 48    It was incumbent upon the court to make this legal determination and to instruct the jury accordingly, which it refused to do. " 'When a case is tried under an incorrect theory of law the appropriate action is to reverse the judgment and remand for a new trial.' " *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 46 (quoting *Sparling v. Peabody Coal Co.*, 59 Ill. 2d 491, 496 (1974)). In light of the foregoing, we remand this case for a new trial consistent with this opinion.

¶ 49                                    III. Conclusion

¶ 50    For the foregoing reasons, the judgment entered on the jury verdict is reversed and this cause is remanded for a new trial consistent with this opinion.


¶ 51    Reversed and remanded.


¶ 52    JUSTICE CATES, specially concurring:

¶ 53    I concur with my colleagues that the judgment for Budget should be vacated and that this matter should be remanded for a new trial. My reasons for this decision, however, are different, in part, than the analysis of the majority.

¶ 54    First, it is undisputed that Budget brought this breach of contract cause of action as the owner of the vehicle and sought to recover damages from Cleveland based upon an indemnity clause in the Agreement. My colleagues have determined that a new trial is warranted because the jury was improperly instructed on Budget's burden of proof, and that on retrial the "ultimate issue" is whether Cleveland had any culpability regarding Morning's use of the rental car. I agree

21

that the trial court erred in its legal analysis of this claim, and thus erred in instructing the jury on Budget's burden of proof. I do not agree that the issue of whether Cleveland voluntarily, or involuntarily, allowed Sammy Morning to drive the vehicle is a relevant factor in determining whether Cleveland breached the Agreement.

¶ 55 In this case, there is no dispute that a valid contract was entered into between the parties. There is no dispute that Budget performed its obligations under the Agreement, at least as that obligation required it to provide Cleveland with a rental car. There is also no dispute as to the material terms contained within paragraphs 14, 15, and 18 of the Agreement. The parties simply disagree on the application of those material terms to the circumstances that occurred when Morning took the keys to the rental car and drove it without Cleveland's permission. And it is irrelevant, in my view, as to whether Cleveland intentionally or unintentionally allowed Morning access to the vehicle. Under any circumstance, based upon the evidence in this record, Morning was an unauthorized user. Thus, the only question was what the term "indemnification" meant under the Agreement.

¶ 56 The relevant indemnification language was set forth in paragraph 18 and provided as follows:

> "18. **Indemnification and Waiver**: You agree to indemnify us, our parent and affiliated companies, for and hold us harmless from any loss, liability and expense that we incur arising out of the use of the car, including reasonable attorney's fees: *** (b) which results from any unauthorized use or prohibited operation of the car."

¶ 57 Under the terms of this clause in the Agreement, the indemnitee, Budget, was required to prove that it suffered a loss *related* to the *unauthorized use* of the car. Thus, there were two issues. First, there was the issue of whether Budget suffered a loss, which included questions regarding the nature of the damages suffered by Budget. Second, was the issue of whether Cleveland was obligated to indemnify Budget for the monies Budget paid to third parties. In that

22

regard, the law of indemnification required Budget to prove that it was legally obligated to pay the damages.[4]

¶ 58    There was no issue of fact that Morning "used" the rental car, and no issue of fact that he was the driver when the rental vehicle was involved in an accident on May 22, 2010. Nevertheless, Budget remained obligated to prove that the sums paid for personal injuries and property damages were *related* to the accident resulting from the unauthorized use of its vehicle, and that there was "a *reasonable basis for computation* of those damages." (Emphasis added.) *Schoeneweis v. Herrin*, 110 Ill. App. 3d 800, 808 (1982).

¶ 59    Here, the measure of damages for breach of contract was the amount that would have compensated the aggrieved party for the losses that resulted from the breach, or the losses that would have been prevented had the contract been fulfilled. *Bowman v. Zimny*, 256 Ill. App. 3d 386, 390-91 (1993). In support of its proof of loss, Budget offered the affidavit of Scott Seemann. Cleveland objected to the introduction of this affidavit. After some discussion between the parties and the court, the affidavit was admitted into evidence with the stipulation that it represented the testimony that Seemann would have given, if called as a witness. The affidavit, alone, was nothing more than proof of amounts paid, and Cleveland's counsel was very clear with the court that the affidavit was not to be construed as an admission of disputed facts. The court then attempted to further clarify the limited purpose of the affidavit for Budget's counsel, stating:

> "But you understand that as to a question of fact, you [Budget's counsel] understand that if there's still a question of fact, the defendant is not agreeing to the question of fact being determined by this affidavit. It just is the testimony of this witness, Scott Seemann. You understand that?"

---

[4]An example of a legal obligation to pay would be if a lawsuit had been filed by one of the third parties against Budget, and a verdict was rendered in favor of that third party, or the circuit court approved a settlement of a case.

¶ 60 The record reflects an acknowledgement by Budget's counsel that the Seemann affidavit would "be as if Scott Seemann testified in front of the jury and that is how he [Cleveland's counsel] would like to handle it." Even after this exchange, the court offered examples of how the information in the Seemann affidavit would be used, and further indicated it was willing to continue the matter to allow Budget's counsel to call Seemann as a live witness in light of the objection by Cleveland's counsel. In short, the trial court did a good job of explaining the limited purpose for which the affidavit could be used. Budget, nevertheless, declined to continue the case and agreed to offer the Seemann affidavit for that limited purpose.

¶ 61 Scott Seemann's affidavit simply indicated that Budget paid money to certain third parties "as a result of the May 22, 2010 accident." In paragraph 10 of the affidavit, Seemann averred:

> "As a result of the May 22, 2010 accident involving the Hyundai Sonata rented by Defendant, Shanika Cleveland, Budget Rent-A-Car Systems, Inc. made the following payments for property damages and personal injuries:
>
> a. $3,141.73 paid to Ebony Jimerson for personal injuries suffered as a result of the May 22, 2010 accident. Ms. Jimerson was the operator of a 1993 Mercury Grand Marquis.
>
> b. $285.00 paid to Shantell Williams, as a parent of Dominic Scott, for personal injuries suffered by Mr. Scott as a result of the May 22, 2010 accident. Mr. Scott was a passenger in the 1993 Mercury Grand Marquis operated by Ms. Jimerson.
>
> c. $615.00 paid to Touchette Regional Hospital for treatment rendered to Dominic Scott for personal injuries suffered as a result of the May 22, 2010 accident.
>
> d. $8,200.00 paid to Carl Sheard for personal injuries suffered as a result of the May 22, 2010 accident. Mr. Sheard was a passenger in the 1993 Mercury Grand Marquis operated by Ms. Jimerson.
>
> e. $1,864.00 paid to Shantell Williams for property damage to her 1993 Mercury Grand Marquis as a result of the May 22, 2010 accident.

24

f. $16,333.33 paid to Rosie Marshall for personal injuries suffered as a result of the May 22, 2010 accident. Ms. Marshall was the operator of a 1997 Chevrolet Lumina.

g. $6,666.67 paid to Allstate Insurance for personal injuries suffered by Ms. Marshall as a result of the May 22, 2010 accident.

h. $3,648.88 paid to Rosie Marshall for property damage to her 1997 Chevrolet Lumina as a result of the May 22, 2010 accident.

i. $708.75 paid to Allstate Insurance for property damage to the 1997 Chevrolet Lumina as a result of the May 22, 2010 accident."

¶ 62 Although the Seemann affidavit listed the dollars paid to third parties, Budget could not rely solely on those figures to prove that the losses were related to the unauthorized use of the vehicle. Further, the Seemann affidavit alone did not prove the nature and extent of the property damages or establish a reasonable basis for computing the property losses incurred by the third parties. Significantly, nothing within the Seemann affidavit qualified Scott Seemann as either an expert witness with specialized knowledge in the assessment of personal injury or property damage claims resulting from motor vehicle accidents, or as a lay witness who had sufficient personal knowledge of the condition and the value of the specific vehicles involved. *State Farm General Insurance Co. v. Best in the West Foods, Inc.*, 282 Ill. App. 3d 470, 483-84 (1996). Even if Budget had attempted to qualify Seemann as a lay witness who could give such an opinion, Seemann would have had to aver that he had a sufficient basis of facts within his personal knowledge from which he could offer such an opinion. *Id.* at 484. The Seemann affidavit is devoid of any facts that would have allowed Budget to rely on the affidavit alone to prove its claims.

¶ 63 The Seemann affidavit indicated that property damage payments were made for two vehicles, a 1997 Chevrolet Lumina and a 1993 Mercury Grand Marquis. There seemed to be no question that these two vehicles were involved in the accident. The owner of the 1993 Mercury

25

Marquis was not called as a witness to describe the damage to the vehicle. The Seemann affidavit provided no evidence regarding the nature and extent of the damage sustained by the 1993 Mercury Marquis as a result of the accident. There was no evidence as to why the sum of $1864 was paid—was it for a total loss or for repairs? There was no evidence as to valuation of a total loss or the fair and reasonable value of any repair costs. Budget could have attached an invoice or some proof of payment that would have allowed the finder of fact to determine the basis for the payment, yet no such information was proffered. Without some evidence, Budget failed to carry its burden of proof regarding damages as to the payments for the 1993 Mercury Marquis.

¶ 64    Budget also failed to offer sufficient evidence regarding the payments made for the 1997 Chevrolet Lumina owned by Rosie Marshall. Marshall testified that her vehicle was totaled and that she was paid around $4500 for the vehicle. Marshall was not asked to describe the damage to her vehicle, and she was not asked to authenticate an appraisal or any other document identifying or describing the valuation of the totaled vehicle. According to the Seemann affidavit, Marshall received $3648.88 for her vehicle, and Allstate received $708.75, totaling $4357.63. Budget offer no evidence to explain why Allstate was paid any monies for Marshall's property damage. It offered no evidence to explain how the property damages were evaluated, and no evidence that the amounts paid were fair and reasonable for the damages caused by the accident. Budget's failure to offer any evidence regarding these payments could not support an award for property damage.

¶ 65    With regard to the payments made for the alleged personal injuries, the absence of proof is even more striking. The Seemann affidavit offered no evidence regarding the specific nature of the injuries alleged to have been suffered by Ebony Jimerson, Dominic Scott, and Carl Sheard.

According to the Seemann affidavit, Jimerson, Scott, and Sheard were in the 1993 Mercury Marquis at the time of the accident. The Seemann affidavit offered no explanation as to the nature and extent of the injuries suffered by the occupants of the 1993 Mercury Marquis, and none of the occupants testified at trial. According to the Seemann affidavit, Ebony Jimerson received $3141.73, and Carl Sheard received $8200. The affidavit, however, did not identify or describe the injuries to Jimerson or Sheard. It did not indicate whether either received treatment for their injuries, or whether they incurred medical bills. It did not indicate how the sums paid for personal injuries were evaluated and whether those payments were fair and reasonable for the injuries sustained. Likewise, the Seemann affidavit provided no evidence of the nature of the injuries sustained by Dominic Scott. There is no explanation as to why Shantell Williams was paid $285 for injuries to Dominic Scott or why Touchette Regional was paid $615 for treatment rendered to Dominic Scott. The Touchette Regional Hospital bill was not attached to the affidavit or otherwise introduced into evidence. Had the bill been identified, the amount paid would have been *prima facie* evidence of its reasonableness. *Arthur v. Catour*, 216 Ill. 2d 72, 82 (2005).

¶ 66    Rosie Marshall testified that she was taken to the hospital for a problem with her neck and back, and that her hospital bill was $10,000. She also testified that she went to physical therapy for awhile. The Seemann affidavit indicated that Marshall was paid $16,333.33 for personal injuries and that Allstate Insurance was paid $6666.67 for personal injuries suffered by Marshall. Nothing in the Seemann affidavit indicated that a payment was made for a hospital bill or physical therapy bill. Marshall was not asked to identify a paid bill for either the hospital or physical therapy. Moreover, Marshall was not asked about the extent of her injuries or her recovery from those injuries at the time of trial. Marshall was not asked to explain why Allstate

27

Insurance had been paid any sums of money for her personal injuries. Clearly, the insurance company did not suffer a personal injury. Thus, the record is silent with regard to why this payment was made. Budget failed to offer evidence to establish the extent of Marshall's damages or a basis for its computation of the sums paid to Marshall, and thus did not meet its burden of proof on this contract claim.

¶ 67    In sum, Budget, not Cleveland, had the burden to prove that the amounts paid for property damage and personal injuries were related to the unauthorized use of the rental car, and that there was a reasonable basis for computation of the amounts paid. While Budget identified sums paid to third parties in the Seemann affidavit, it failed to offer any evidence that the payments were related to the unauthorized use of the vehicle, and failed to provide a reasonable basis for having made those payments. Further, had the correct jury instructions been given, the jury would have been charged with the responsibility of determining whether Budget met its burden of proving that its losses arose out of the unauthorized use of the car, and, that the amounts paid were fair and reasonable. Finally, the jury was not allowed to consider the question of whether Budget was obligated to pay the amounts identified in the Seemann affidavit, or whether it payed those amounts voluntarily.

¶ 68    This was a simple breach of contract case. The trial court indicated that it would not instruct the jury on any matter "[t]hat's not within the four corners of the contract," but then failed to allow an instruction on indemnification. The indemnification clause was, indeed, within the four corners of the Agreement, and was deserving of an instruction. The trial court's failure to allow Cleveland to present the affirmative defense of indemnification was error and is the basis for a new trial.

28

¶ 69    Accordingly, I agree that the judgment entered on the verdict must be vacated and that this case should be remanded for a new trial.

**No. 5-17-0458**

| | |
|---|---|
| **Cite as:** | *Budget Rent-A-Car System, Inc. v. Cleveland*, 2020 IL App (5th) 170458 |
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 15-AR-634; the Hon. Thomas B. Cannady, Judge, presiding. |
| **Attorney for Appellant:** | David Maxwell Duree of David M. Duree & Associates, P.C., for appellant. |
| **Attorney for Appellee:** | Laura Kristin Beasley of Baker, Sterchi, Cowden & Rice, LLC, for appellee. |